IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-00166-RJ

JOHN ROBERT MCGIVNEY,                    )
                                         )
            Plaintiff/Claimant,          )
                                         )
                                         )          **ORDER**
            v.                           )
                                         )
CAROLYN W. COLVIN, Acting                )
Commissioner of Social Security,         )
                                         )
            Defendant.                   )

This matter is before the court on the parties' cross-motions for judgment on the pleadings

[DE-31, DE-33] pursuant to Fed. R. Civ. P. 12(c). Claimant John Robert McGivney ("Claimant")

filed this action *pro se* pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the

denial of his application for a period of disability and Disability Insurance Benefits ("DIB").

Claimant responded to Defendant's motion [DE-40] and the time for filing a reply has expired.

Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the

administrative record and the motions and memoranda submitted by the parties, Claimant's Motion

for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is

denied, and the case is remanded to the Commissioner for further proceedings consistent with this

Order.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 15, 2012,

alleging disability beginning December 4, 2009. (R. 22, 149-52). His claim was denied initially and

upon reconsideration. (R. 66-99, 103-06). A hearing before the Administrative Law Judge ("ALJ")

was held on March 25, 2014, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 31-65). On April 18, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 19-30). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 17), and submitted additional evidence as part of his request (R. 744-52). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on June 8, 2015. (R. 7-12). Claimant sought an extension of time (R. 3-6), which the Appeals Council granted on September 1, 2015 (R. 1-2). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded*

2

*by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently
> working; and (2) must have a "severe" impairment that (3) meets or exceeds [in
> severity] the "listings" of specified impairments, or is otherwise incapacitating to the
> extent that the claimant does not possess the residual functional capacity to (4)
> perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails

at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the

first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ

to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies

four broad functional areas in which the ALJ rates the degree of functional limitation resulting from

a claimant's mental impairment(s): activities of daily living; social functioning; concentration,

persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required

to incorporate into his written decision pertinent findings and conclusions based on the "special

technique." *Id.* § 404.1520a(e)(3).

3

In this case, Claimant alleges that the ALJ erred by misrepresenting how Claimant lost his last job; by omitting compelling material evidence of medical treatment; in equating Claimant's ability to perform activities of daily living with his ability to perform substantial gainful activity; by improperly weighing medical opinion evidence; by omitting material Global Assessment of Functioning ("GAF") scores; and by failing to find that Claimant met Listing 12.04. Pl.'s Mem. [DE-32] at 6-29.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 24). Next, the ALJ determined Claimant had the following severe impairments: diabetes mellitus, major depressive disorder, and bipolar disorder. *Id.* The ALJ also found Claimant had a nonsevere impairment of a history of aortic valve replacement. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24-25). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living, and moderate limitations in social functioning and concentration, persistence, or pace with no episodes of decompensation. (R. 25).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

4.

ability to perform medium work[1] requiring a limitation to simple, routine tasks in a low-stress environment with only occasional changes in the work setting and occasional interaction with coworkers and the public. (R. 26). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 27).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work in food delivery. (R. 29). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29-30).

## V. DISCUSSION

### A.    The ALJ's Consideration of Claimant's Credibility and Medical Treatment

Claimant contends that the ALJ misrepresented Claimant's testimony about how he lost his last job, which decimated his credibility, and omitted compelling material evidence of medical treatment, such as the high dosage amounts of Claimant's prescription medications. Pl.'s Mem. [DE-32] at 6-8. In response, Defendant argues that any misrepresentation about Claimant's job loss was harmless error where the ALJ otherwise properly considered Claimant's credibility and the ALJ is not required to specifically comment on every piece of evidence and did not err in failing to mention specific dosage amounts of medications. Def.'s Mem. [DE-34] at 4-6, 12-13. This court agrees with Claimant that the ALJ erred in considering Claimant's credibility and the medical treatment evidence, frustrating meaningful review and requiring remand.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

5

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL

1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the

entire case record to determine that claimant's subjective complaints of pain were not entirely

credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The ALJ summarized Claimant's hearing testimony as follows:

> the [C]laimant testified that he lives alone in an apartment for the past ten years. He last worked in 2009, as a delivery person on a college campus. The [C]laimant reported that he was fired from that job because he failed to disclose that he was convicted of a felony. He also noted that he was argumentative with coworkers and had been suspended. There was a legal action related to the incident, which has settled. The [C]laimant reported other employment, prior to being a delivery person, as a bank teller, video store clerk, assistant vice president, branch manager, substitute teacher and postal service clerk. He reported incidents of conflict and disagreements, while employed as a branch manager that resulted in him being fired. The [C]laimant reported that he received unemployment benefits. He indicated that he was looking for any type of work. He had two interviews, but was not hired. The [C]laimant reported that he was diagnosed with depression and bipolar disorder while incarcerated and treated with medication. He indicated that he was suicidal in 2012 when he stopped taking the prescribed medication. The [C]laimant noted racing thoughts, fatigue, low tolerance and problems concentrating.

(R. 26). Claimant correctly notes that the ALJ misrepresented the reason Claimant lost his last job.

Indeed, at the hearing, Claimant testified that he had disclosed his felony record when he was hired

and was told when he was fired that his employer could no longer employ him based on that felony

record, but Claimant believed this was a pretext and his employer no longer wanted to deal with

Claimant's intermittent family medical leave absences. (R. 35-36). This court cannot agree with

Claimant that this misrepresentation constitutes actionable misconduct or bias on the ALJ's part, but

rather appears to be a simple misrepresentation of Claimant's hearing testimony. However, the ALJ

also failed to recount most of Claimant's hearing testimony related to his actual symptoms and day-

to-day problems based on his impairments, simply stating that Claimant had been diagnosed with

depression and bipolar disorder, had been suicidal when he discontinued his medication, and

7

experienced racing thoughts, fatigue, low tolerance, and problems concentrating. (R. 26).

Claimant testified that his current medication helped his symptoms, but described problems that he has continued to experience. For example, Claimant testified as to his current medication regimen as follows: "I feel pretty well now, you know, with that regimen of treatment, but there are still times when I'm just like out of the blue just horribly dysfunctionally depressed, you know, that I don't want to talk to anybody, I don't want to leave the house . . . ." (R. 54). Claimant also testified that his hyper irritability improved after he stopped working and was no longer regularly interacting with people:

> No, the hyper irritability wasn't as bad after the worked stopped. Without the stress burden of work it wasn't that bothersome for me. But I didn't have all kinds of interactions. I mean, I hardly knew anybody. I got one friend here, a couple of friends I talked to on the phone. So it wasn't like I was out, you know—I didn't have occasion to test, you know, my tolerance for interactions with others during this period because, you know, hardly ever associated with anybody except my doctors or what have you.

(R. 55). Further, Claimant stated that he is able to concentrate but struggles with a low tolerance threshold, such that he has fits while trying to complete tasks. (R. 56). For example, when trying to cook breakfast, Claimant stated he gets "really stressed and pissed off" and will react by verbally protesting, cursing, and throwing dishes. *Id.* As to his racing thoughts, Claimant testified that at times, "not only would I be depressed, but my thoughts at the time would be racing . . . . I have had periods where I can't stop thinking about anything, and it just overwhelms me. And I would usually end up in bed and try to go to sleep to escape . . . ." *Id.* Claimant also stated that he has recurring episodes of severe depression, where he experiences fatigue such that he has no energy and feels sick, as though he has the flu. (R. 56-57).

After summarizing the Claimant's hearing testimony as reflected above, the ALJ found that

8

Claimant's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 27). The ALJ then went on to summarize Claimant mental health treatment evidence as follows:

> the medical evidence reveal[s] that the medications and treatment have been relatively effective in controlling the [C]laimant's symptoms. The record notes a history of depression and thoughts of suicide. The [C]laimant was prescribed Depakote and Wellbutrin to aid in the management of his condition. In May 2010, the [C]laimant reported that he felt better and was predominantly non-depressed. The [C]laimant reported in April 2010, that he was getting out more, going to the beach and eating out. (Exhibit 5F) The record reflects that the [C]laimant's medications have been adjusted due to flattening his affect. However, new medications have helped with depression. (Exhibit 11F) The [C]laimant was assessed with a [GAF] score of 60 in September 2013, while taking the prescribed medications. (Exhibit 19F) The record notes a past GAF score of 45, when the [C]laimant was off the medication. (Exhibit 11F) In November 2013, the [C]laimant reported that the medications seem to wear off and he becomes depressed and ruminating thoughts of hopelessness and worthlessness. He indicated that his mood goes from sad to irritable to happy. However, the record notes that the [C]laimant changed to generic pills since the last refill. The [C]laimant's medication was changed to include Lithium. (Exhibit 22F) On follow-up examination in February 2014, the [C]laimant had no complaints. He was tolerating the Lithium and noted decreased mood [lability]. He denied side effects and noted that he was sleeping well. The [C]laimant's insight, judgment and attention were good and he denied suicidal ideation. (Exhibit 24F)[.]

(R. 27). Claimant takes issue with the fact that the ALJ did not fully present Claimant's medication regimen and selectively cited only two GAF scores. The ALJ is not required, however, to recite his or her consideration of each piece of evidence in the record. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762, n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied") (quoting *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998)); *Brewer v. Astrue*, No. 7:07-CV-24-

9

FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (unpublished) ("[T]he ALJ is not required to comment in the decision on every piece of evidence in the record and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.") (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)).

More troubling than the omissions identified by Claimant, however, is the fact that the ALJ cursorily states that Claimant's condition improved once he switched to Lithium, despite treatment notes reflecting that Claimant was still struggling with depressive symptoms after the change in medication. *See* (R. 751) (Mar. 28, 2014 treatment note indicating improving mood, sadness in the past few weeks, and less lability); (R. 749) (May 30, 2014 treatment note discussing increased lability and sadness, and increasing Claimant's Lithium dosage); (R. 747) (July 31, 2014 treatment note documenting that Claimant "[f]eels really down at times for several days[,]" feels irritable, has increased mood lability and sadness, and increasing Claimant's Lithium dosage); (R. 745) (Aug. 29, 2014 treatment note discussing that Claimant had severe depressive symptoms in the last month which had decreased in the last three days, and had daily thoughts of suicide, including a thought of overdosing on insulin).

After summarizing the treatment records, the ALJ stated that "[a]fter a thorough review of the current medical evidence, I have determined that the residual functional capacity assessment with the limitations as described, adequately considers the [C]laimant's subjective complaints." (R. 28). The ALJ also states that [t]here are positive findings that somewhat support the [C]laimant's subjective symptoms and reported limitations. The [C]laimant's medical record is positive for diabetes mellitus, major depressive disorder and bipolar disorder." *Id.* The problem with the ALJ's analysis is that he fails to fully discuss Claimant's hearing testimony about his symptoms as a result

of his depression and bipolar disorder and the medical record evidence demonstrating that Claimant continued to have difficulty with these conditions even after changing medications, and, as was the case in *Mascio*, fails to make clear "how he decided which of [claimant's] statements to believe and which to discredit." *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015); *see Perez v. Colvin*, No. 1:13-CV-324, 2015 WL 7302257, at \*4-6 (M.D.N.C. Nov. 18, 2015) (unpublished) (finding the "ALJ's recitation of the objective medical evidence did not constitute a sufficient credibility analysis under *Mascio*" because the court is "left to speculate as to why the ALJ credited some portions of Plaintiff's testimony, while discrediting other portions."). At the hearing, Claimant discussed his recurring serious depressive episodes and difficulty completing tasks, and his medical records document that he continued to have problems with depression and suicidal thoughts even after changing medications to Lithium. The ALJ failed to evaluate this testimony and medical record evidence, consequently, it is unclear what portions he found to be credible or not credible and, importantly, whether he appropriately considered the limiting effects of Claimant's anxiety and pain on his ability to work, including whether additional nonexertional limitations were appropriate. *See* 20 C.F.R. 404.1545(a)(3) (in determining a claimant's RFC "[w]e will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you . . . .").

The ALJ's generic statement that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted . . ." (R. 26) is insufficient in that it does not allow for substantial evidence review. *See Fox v. Colvin*, 632 F. App'x 750, 754 (4th Cir. Dec. 17, 2015) (unpublished) (per curiam) ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record

11

Case 7:15-cv-00166-RJ   Document 41   Filed 09/29/16   Page 11 of 13

evidence.") (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted) &

citing *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 260 (4th Cir. 1977) (the ALJ failed

to include an adequate discussion "in what amount[ed] to no more than a bare recital that [the ALJ]

considered the evidence.")). Indeed, "[a] necessary predicate to engaging in substantial evidence

review is a record of the basis for the ALJ's ruling." *Radford*, 734 F.3d at 295; *see also Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (per curiam) (concluding that an ALJ is

required to build an "accurate and logical bridge" between the evidence and his conclusions)

(citation omitted). Remand for further proceedings is the appropriate remedy in cases such as this

where "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether

substantial evidence supports the ALJ's findings." *Radford*, 734 F.3d at 295. The Fourth Circuit

has made clear that it is not the role of the court to remedy such failures by engaging in the required

analysis in the first instance. *See Fox*, 632 F. App'x at 755 ("Our circuit precedent makes clear that

it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the

ALJ's justifications that would perhaps find support in the record."); *Radford*, 734 F.3d at 296

(citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)). Accordingly, the case is remanded so that

the ALJ may properly consider Claimant's testimony at the administrative hearing and explain "how

he decided which of [claimant's] statements to believe and which to discredit" as required by

*Mascio*, 780 F.3d at 640, and so that the ALJ may fully consider the medical record evidence.

Because the court has concluded the case should be remanded on this issue, the court declines to

consider the other issues of error raised by Claimant.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-31] is

12

ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-33] is DENIED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Order.

So ordered, this the 29 day of September, 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

13